# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA

ALAN ANTOINE TOWNSEND,

    **Plaintiff,**

v.                                                      Civil Action No. 1:10cv123
                                                               (Judge Keeley)

U.S. DEPARTMENT OF JUSTICE,
FEDERAL BUREAU OF PRISONS,
AND UNITED STATES PENITENTIARY -
HAZELTON,

    **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this case pursuant to a civil rights complaint filed on August 11, 2010. He was granted permission to proceed as a pauper on August 17, 2010 and assessed an initial partial filing fee. The plaintiff paid his initial partial filing fee on October 1, 2010. Accordingly, this case is before the undersigned for a preliminary review and Report and Recommendation pursuant to LR PL P 2 and 28 U.S.C. §§ 1915(e) and 1915A.

### II. The Complaint

In the complaint, the plaintiff makes several claims for relief. First, he asserts that on December 6, 2009, he was one of several black inmates involved in an altercation with white inmates. [Dckt. 1 at 3] The plaintiff asserts that although the altercation was initiated by the white inmates, only the black inmates were punished. *Id.* After the incident, a hearing was held to determine if the plaintiff should be placed in the Special Management Unit ("SMU") due to his history of serious and disruptive disciplinary infractions. *Id.* The plaintiff asserts that he has no

history of serious and disruptive behavior. *Id.* In fact, the plaintiff contends that prior to the December 6th altercation, he had never been in any trouble. *Id.* Moreover, he asserts that he played only a minor role in that incident, unlike some of the white inmates who received no punishment. *Id.*

Second, the plaintiff asserts that after he arrived at USP-Hazelton, he "put in" several requests for an eye exam. *Id.* However, he alleges that he had to wait several months before his eyes were examined, during which time he suffered headaches from blurry vision. *Id.* The doctor who eventually examined the plaintiff's eyes supposedly informed the plaintiff that his eyes were "messed up," and placed him on a list to see an optometrist. *Id.* Nonetheless, after the altercation on December 6, 2009, the plaintiff received a notice stating that he was disapproved to see an optometrist. *Id.* The plaintiff asserts that he then went seven months without his required glasses and did not receive a pair until he was transferred to another facility. *Id.*

Third, the plaintiff asserts that on December 21, 2009, he was seen by the facility's dentist. *Id.* At that time, the dentist extracted a molar and a wisdom tooth. *Id.* The plaintiff was informed that it would take about two weeks for his mouth to fully heal. However, one month later, the entire right side of the plaintiff's face was still swollen and his gums were still sore and bleeding. *Id.* at 3-4. The plaintiff requested to see the dentist on January 27 and 29, 2010. *Id.* at 4. He received no response. *Id.* The plaintiff filed grievances and still received no response. *Id.* During this time, the plaintiff's mouth was so sore that he could not eat, and as a result, lost 25 pounds. *Id.* By March, the plaintiff allegedly had puss leaking from his cheek. *Id.* The plaintiff was finally seen by the dentist in April and given antibiotics. *Id.* He alleges, however, that his medical needs were neglected for four months. *Id.*

As relief, the plaintiff seeks to be withdrawn from the SMU program and placed in a regular federal correctional institution. *Id.* at 5. He also wants back the good time credit he lost. *Id.* Finally, he wants to be compensated for the pain he suffered as a result of the lack of medical case and for the libel statements that were made on his SMU hearing paperwork. *Id.*

### III. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. § 1915(e).

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint filed *in forma pauperis* which fails to state a claim is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992).

### IV. Analysis

**A. Lost Good Time**

Although the plaintiff does not specifically state so in his complaint, it appears that he was

---

[1] *Id.* at 327.

3

disciplined for his part in the altercation of December 6, 2009, and lost good time credits. The plaintiff seeks the restoration of those good time credits. However, to the extent that the plaintiff seeks the invalidation of any disciplinary sanctions that resulted in a loss of good time credits, that claim should have been raised pursuant to a Petition for Writ of Habeas. See Preiser v. Rodriguez, 411 U.S. 475 (1973). Accordingly, the plaintiff has no chance of success on the merits of this claim and it should be dismissed as frivolous.

**B. SMU Program**

In this ground, the plaintiff appears to assert that he should be withdrawn from the SMU program because the white inmates who were involved in the December 6th altercation were allowed to remain at a regular FCI. The undersigned thus construes this claim as one of equal protection.

To be successful on an equal protection claim, the plaintiff must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F. 3d 648, 654 (4th Cir. 2001). In this case, while the plaintiff may well part of a suspect class, he cannot show that he was treated differently than others who were similarly situated or that the unequal treatment was a result of intentional or purposeful discrimination.

Here, the plaintiff was not designated for the SMU simply because he was involved in the December 6th altercation. Although that incident may have precipitated the plaintiff's referral to the program, he was also referred because of his history of serious and disruptive behavior. [Dckt. 1 at Ex. 4.] The plaintiff has not shown that any other inmate who, regardless of race, was involved in the December 6th altercation also had a history of disruptive behavior. For similar reasons, the plaintiff cannot show that his SMU designation was the result of intentional or purposeful

discrimination, rather than legitimate security and management concerns.

**C.  Medical Neglect**

As a preliminary matter, the Court notes that the plaintiff does not cite a jurisdictional basis for this claim.  Nevertheless, because he asserts that federal employees failed to provide him with proper medical treatment in violation of his constitutional rights, the Court construes the plaintiff's claim as one of deliberate indifference to his serious medical needs under the Eighth Amendment of the United States Constitution.  The proper mechanism for seeking the enforcement of such a right falls under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (authorizing suits against federal employees for violations of constitutional rights).

However, a Bivens cause of action is only available against federal officers in their individual capacities, and not the federal agency which employs the persons acting under federal law.  See FDIC v. Meyer, 510 U.S. 471, 484-86 (1994) (refusing to find a Bivens remedy against a federal agency); see also Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under Bivens is against federal officials individually, not the federal government.").  Likewise, a jail or correctional facility is not a "person" for purposes of Bivens liability.  See Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C.1989) (a jail is not a person amenable to suit); see also Will v. Michigan Dept. Of State Police, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons'"); Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished) ("the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit").  Thus, neither the Department of Justice, the Federal Bureau of Prisons nor USP-Hazelton is an appropriate defendant in this action and those defendants must be dismissed.

**D. Libel**

"Defamation published in written form, as opposed to spoken form, constitutes libel" See Greenfield v. Schmidt Baking Co., Inc., 199 W.Va 447, 455 485 S.E.2d 391, 399 (1997). "The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." *Id.* A defamatory statement is one that harms the reputation of another so "as to lower him in the estimation of the community." *Id.*

In this case, the plaintiff alleges that a statement made on his SMU referral form was false and therefore libelous. That statement reads: "You have a history of serious and disruptive disciplinary infractions." However, even assuming this statement is false,[2] falsity is only one element of libel. The plaintiff has not shown that such a statement was defamatory, that it was communicated to a third party, that there was negligence on the part of the publisher or that it resulted in any particular injury. Accordingly, this claim cannot be sustained.

**V.     Recommendation**

For the reasons stated, the undersigned recommends that the plaintiff's complaint (dckt. 1) be **DISMISSED** under 28 U.S.C. §§ 1915(e) and 1915A for the failure to state a claim.

Within **fourteen (14) days** after being served with a copy of this Opinion/Report and

---

[2]Although the plaintiff asserts in his complaint that he had "never been in trouble" prior to the December 6, 2009 altercation, the SMU referral form states that since the plaintiff's arrival at USP-Hazelton on July 15, 2009, he had received at least two incident reports for aiding in the serious assault of an inmate. The plaintiff does not dispute that statement. Thus, it does not appear that the statement on the plaintiff's SMU form is false.

6

Recommendation, any party may file with the Clerk of the Court, written objections identifying those portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. The failure to timely file objections as set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

       IT IS SO ORDERED.

       The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket.

       DATED: October 13, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE