FILED

APR 1 3 2012

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ALAN ANTOINE TOWNSEND,

     Plaintiff,

v.                                  CIVIL ACTION NO. 1:10cv123
                                        (Judge Keeley)

MICHAEL AZUMAH,
DDS CHAD WESTFALL,
PATRICIA CORBIN,
MICHAEL WEAVER,

     Defendants.

## REPORT AND RECOMMENDATION

## I. Procedural History

     The *pro se* plaintiff initiated this case pursuant to a civil rights complaint on August 11, 2010.

He was granted permission to proceed as a pauper on August 17, 2010 and assessed an initial partial

filing fee which he paid on April 1, 2010. The plaintiff's complaint named the U.S. Department of

Justice, Federal Bureau of Prisons, and USP-Hazelton as defendants. The plaintiff made several

claims for relief. First, he asserted that on December 6, 2009, he was one of several black inmates

involved in an altercation with white inmates. The plaintiff asserted that although the altercation was

initiated by the white inmates, only the black inmates were punished. Specifically, it appears that

the plaintiff was disciplined with the loss of good time credits and placed in the Special Management

Unit ("SMU"). Second, he asserted that after he arrived at USP-Hazelton, he put in several requests

for an eye exam but had to wait several months for an examination. During that intervening time, he maintained that he suffered headaches from blurry vision. The plaintiff maintained he was then disapproved to see an optometrist and did not receive a pair of glasses until he was transferred to another facility. Finally, the plaintiff alleged that following the extraction of his molar and wisdom tooth in December of 2009, the entire right side of his face became swollen and his gums were bleeding. The plaintiff claimed that he requested to see the dentist on January 27 and 29, 2010 but received no response. The plaintiff further maintained that he filed grievances and still received no responses. The plaintiff claimed that his mouth was so sore that he could not eat and lost 25 pounds. The plaintiff was finally seen by the dentist in April and given antibiotics. However, the plaintiff alleged that his medical needs were neglected for four months.

The undersigned conducted an initial review of the plaintiff's complaint and entered a Report and Recommendation on October 13, 2010. The undersigned concluded that to the extent that the plaintiff sought the invalidation of any disciplinary sanctions that resulted in the loss of good time credits, that claim should be raised pursuant to a petition for Writ of Habeas Corpus. With respect to his claim that he should be withdrawn from the SMU, the undersigned concluded that he did not allege a successful equal protection claim. Finally, with respect to the plaintiff's Eighth Amendment claims regarding medical care, the undersigned concluded that plaintiff had failed to name a proper defendant. Accordingly, the undersigned recommended that the plaintiff's complaint be dismissed for failure to state a claim.

Following receipt of the Report and Recommendation, the plaintiff filed a Motion to amended his complaint. On December 1, 2010, the Honorable Irene M. Keeley, entered an Order

2

adopting the Report and Recommendation and Dismissed without Prejudice the plaintiff's claims seeking restoration of good time credits, challenging his designation to the SMU, and seeking damages for libel. However, the Order granted the plaintiff leave to file an amended complaint within thirty (30) days and remanded the case to the undersigned for further consideration.

The plaintiff filed his amended complaint on February 11, 2011, stating that M. Azumah, Chad Westfall, Mr. Milton, Ms. Corbin and Mr. Weaver were deliberately indifferent to his serious medical needs under <u>Bivens</u>. Moreover, although he was previously advised that the U.S. Department of Justice, the Federal Bureau of Prisons and the U.S. Penitentiary-Hazelton were not proper defendants under <u>Bivens</u>, the plaintiff again named them as defendants. Accordingly, on March 18, 2011, the undersigned entered another Report and Recommendation which recommended that the U.S. Department of Justice, the Federal Bureau of Prisons and the U.S. Penitentiary-Hazelton be dismissed as defendants. It further recommended that the plaintiff's claims against the individual defendants proceed, and that those defendants be served with a copy of the complaint and a summons. On April 11, 2011, the Honorable Irene M. Keeley adopted the Report and Recommendation, dismissed with prejudice the institutional defendants and ordered that the plaintiff's claims against the individual defendants proceed.

Sixty-day summonses were initially issued on April 11, 2011, and were returned as executed on April 25, 2011. According to the executed summonses, service was accepted on the defendants behalf by Mike Romano, staff attorney at USP-Lewisburg. Nonetheless, on May 3, 2011, the executed summonses were returned to the Clerk and marked, "None @ Lew." It being clear that the defendants are or were employees of the BOP at USP-Hazelton, the Clerk was directed to re-issue

3

service of process for the defendants at USP-Hazelton and forward copies of the new summonses, copies of the complaint, and corrected Marshal 285 forms to the USMS for service. The summonses were thereafter returned as executed against all the defendants except Chad Westfall.

On October 5, 2011, the defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment with a memorandum in support. A <u>Roseboro</u> Notice was issued on October 11, 2011. On October 27, 2011, the plaintiff filed a response in opposition to the defendants' motion, and on November 9, 2011, the defendants filed a reply.[1]

## II. The Amended Complaint

The plaintiff is a federal inmate, currently incarcerated at USP-Coleman II, which is located in Coleman, Florida. However, his surviving claim of deliberate indifference to his medical needs stems from his incarceration at USP-Hazelton, which is located in Bruceton Mills, West Virginia. As previously noted, the plaintiff makes two claims with respect to his medical care.

In his amended complaint, he alleges that he arrived at USP-Hazelton on July 15, 2009. He claims that during his intake medical screening, he told the nurse that he needed glasses. He further maintains that on October 30, 2009, he had an eye exam performed by Michael Azumah, MLP[2], and after the exam, Dr. Azumah stated that his eyes were "messed up," and that he would be placed on the list to see an optometrist for further evaluation. The plaintiff maintains that on or around December 8, 2009, he received a notice in the mail stating that his request for further examination

---

[1] The plaintiff filed a rebuttal to the defendants' response, but it was ordered stricken from the record and returned to the plaintiff.

[2] According to the Declaration of Michael Azumahm he is employed as a Mid-Level Practitioner, and the undersigned assumes that is what the initials "MLP" denote.(Doc. 66-2, p. 1).

by the optometrist had been denied. The plaintiff indicates that no explanation was given. The plaintiff maintains that repeatedly submitted requests to see the optometrist, and they all went unanswered. The plaintiff continues by noting that in or around May 2010, he had another eye exam performed by Inerio Alarcon, MD, and once again he was told he would see the optometrist. A week or so later, he was transferred to USP-Lewisburg, where he was examined and received glasses within six weeks. The plaintiff complains that for the entire nine months that he was in USP-Hazelton, he was never allowed to see the optometrist for reasons that were never explained to him.

Second, the plaintiff asserts that on December 21, 2009, he had a wisdom tooth and a molar removed on the right side of his lower jaw. He indicates that after surgery, he was given Ibuprofen for the pain and was told by the dentist, Chad Westfall, that there would be some swelling and pain for about two weeks. The plaintiff notes that in or around January 20, 2010, he noticed that the swelling had not completely gone down and there was still severe pain. He maintains that he submitted a medical request form that went unanswered. The plaintiff continues by alleging that on or around February 2010, the whole left side of his face was swollen, and he was in excruciating pain whenever he tried to eat solid foods. He maintains that he submitted medical request forms once a week in February, and they all went unanswered. The plaintiff alleges that in or around March, he was provided a BP-8 by his case manager at the time, Mr. Mura. The plaintiff maintains that he never received an answer to his BP-8, nor were his BP-9 or BP-10 answered. By March, the plaintiff maintains that he was in so much pain that he slept most days and could not sleep at night. He also alleges that his weight dropped from 186 pounds to 161 pounds because he was not

5

able to eat regularly because of the pain. The plaintiff contends that he spoke with his Unit

Manager at the time on three separate occasions, and he said he "would look into it" (Doc. 20, p.

2). The plaintiff claims that in or around the end of March, he woke up and had pus leaking from

the right side of his cheek. He indicates that he spoke to Mr. Weaver, who he was told was in

charge of Health Services. The plaintiff indicates that Mr. Weaver took one look at his face and

assured him that he would get him in to see the dentist. Two weeks later, he was seen by the

dentist, Dr. Westfall, and was told his mouth was fine, and his face was leaking pus because of an

infected hair. The plaintiff alleges that he knew this was a mis-diagnosis due to the fact that since

his oral surgery, hair does not grow on that part of his face. He alleges that he told this to the doctor

and was given Ibuprofen and an antibiotic. The plaintiff maintains that the swelling eventually went

down but that from time to time, he still has pain in his right lower jaw, and the hair on his face

does not grow regularly.

For relief, the plaintiff seeks compensation in the sum of $5,000,000 for "medical

negligence, violation of [his] civil right to receive adequate medical care and the pain and suffering

[he[ had to endure at United States Penitentiary Hazelton.

## III. **The Answer**

For their answer, the defendants have filed a Motion to Dismiss, or in the alternative,

Motion for Summary Judgment. As support therefore, the defendants assert the following:

    A. The plaintiff's claims should be dismissed for failure to exhaust his administrative
       remedies;

    B. Defendant, Patricia Corbin, a U.S. Public Health Service Employee, and is immune
       from Bivens liability;

C. The plaintiff's claims against defendants Weaver and Milton should be dismissed for lack of personal involvement;

D. The plaintiff fails to establish a claim for which relief may be granted for violation of the Eighth Amendment;

E. The plaintiff's claims against all the defendants should be dismissed because the defendants are entitled to qualified immunity.

## IV. The Plaintiff's Response

In his response, the plaintiff reiterates his claims regarding the alleged indifference to his pain and suffering stemming from the extraction of his molar and wisdom tooth. The plaintiff also sets forth his argument that his ability to exhaust his administrative remedies was thwarted by defendant Milton. The plaintiff does, however, concede that defendant Azumah should be dismissed from the complaint because he acknowledges that he failed to exhaust his administrative remedies regarding eye/vision care.

## V. The Defendants' reply

In their reply to the plaintiff's response, the defendants set forth the distinction between a BP-8, which is an attempt at informal resolution, and a BP-9 through BP-11, which are the official steps of the Administrative Remedy Program. The defendants contends that neither the Constitution nor Federal Regulations create an entitlement to the grievance procedures. Accordingly, the defendants argues that the plaintiff has not stated a claim against defendant Milton upon which relief can be granted.

## VI. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of

defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when

8

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. <u>Id</u>.

### B. <u>Summary Judgment</u>

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. liberty lobby, Inc.</u>, 477 U.S. 242, 248 *1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u> at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Electric Industrial Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id</u>. This means that the "party opposing a properly supported motion for summary judgment may not

rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u> at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id.</u> at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id.</u> "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.,</u> 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u> at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u> at 587 (citation omitted).

## VII. <u>Analysis</u>

### A. <u>Exhaustion of Administrative Remedies</u>

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). A <u>Bivens</u> action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available. <u>Booth</u> at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal

---

[3] *Id.*

court.  See Porter,  at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford at 92-94 (emphasis added).  Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system.  *Id.* at 101-102.

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results.  See 28 C.F.R. § 542.10, et seq.  This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated.  If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located.  (For inmates confined at FCI-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.)  If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal.  An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint.  Here, the

11

defendants have alleged that the plaintiff failed to exhaust his administrative remedies as an affirmative defense. To this end the defendants have provided an affidavit from Kevin Littlejohn, a Paralegal Specialist and Administrative Remedy Clerk at the Mid-Atlantic Regional Office of the BOP. Mr. Littlejohn, in his affidavit, avers that the plaintiff had filed only one (1) administrative remedy during his designation to the custody of the BOP through September of 2011. That Remedy ID No. 588015-R1 dealt with a Disciplinary Hearing and had nothing to do with medical care, either dental or vision, at USP-Hazelton.

In his response, the plaintiff admits that he did not exhaust his administrative remedies with respect to his allegations regarding vision care at USP-Hazelton and acknowledges that Dr. Azumah must be dismissed as a defendant. However, he alleges that he made several requests for a BP-8, to grieve his issues with respect to dental care but was never provided those forms. Accordingly, the plaintiff claims that by not responding to any of his requests, the staff, and in particular his unit manager, Richard Milton, denied him the opportunity to exhaust his administrative remedies. However, Mr. Milton has also supplied a Declaration which indicates that although he was the plaintiff's Unit Manager from July 15, 2009, until May 24, 2010, the plaintiff was housed in the SHU from December 12, 2009, until May 23, 2010. When housed in the SHU, inmates must make their requests for an appointment to the health services personnel conducting daily rounds in the SHU. Moreover, Mr. Milton specifically denies that the plaintiff ever requested any administrative remedy forms from him.

More importantly, in his complaint, the plaintiff maintains that he was provided a BP-8 by a Mr. Mura which was never answered, nor were his BP-9 or BP-10. Therefore, the plaintiff contradicts himself by appearing to concede that he was able to procure the BP-8, BP- 9, and BP-

10 that are required for the administrative process. However, the plaintiff makes no mention of a BP-11. Assuming the plaintiff did file a BP-9 and BP-10 that went unanswered, he was still required to file a BP-11 to fully exhaust his administrative remedies.[4]

Accordingly, the weight of the evidence indicates that the plaintiff failed to exhaust his administrative remedies with respect to his dental care as well as his vision care, and the plaintiff's entire complaint should be dismissed. However, even if the plaintiff had exhausted his administrative remedies regarding his dental care, his complaint would still be due to be dismissed.

## B. Chad Westfall, DDS

The record before the court reflects that the summons for Dr. Westfall was returned unexecuted. (Doc. 50). The records of the BOP establish that Dr. Westfall was employed as a dentist at USP-Hazelton from July 9, 2009, until April 23, 2010. Dr. Westfall resigned from employment with the BOP on April 23, 2010. (Doc. 66-6, p. 2). Because no service has been obtained against Dr. Westfall, any claims made against him by the plaintiff should be dismissed without prejudice.

## C. Health Services Administrator Michael Weaver and Unit Manager Richard Milton

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)(internal citations omitted). Thus, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir.

---

[4] Pursuant to 28 C.F.R. § 542.18, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." In other words, if no response is received, the grievance is deemed denied and the inmate may appeal that denial to the next level. Thus, a lack of response does not relieve an inmate of his duty to complete each level of the administrative process, allow him to abandon the process or otherwise waive the exhaustion requirements.

1994); <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 666 (3rd Cir. 1988). Some personal

involvement on the part of the defendant and a causal connection to the harm alleged must be

shown. <u>See</u> <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot

form the basis of a claim for a violation of a constitutional right in a <u>Bivens</u> case.[5] "Because

vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution." <u>Ashcraft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1948 (2009). "Absent vicarious

liability, each Government official, his or her title notwithstanding, is only liable for his or her own

conduct." <u>Id.</u> at 1948-49.

In this case, plaintiff does not allege any personal involvement in his medical care on the part

of Mr. Weaver. Rather, he alleges that in or around March of 2010, he explained to Mr. Weaver

in great detail the pain he had been suffering and showed him the boil-like lesion on his face. The

plaintiff alleges that Mr. Weaver told him that the dentist was "out for a while, but assured him that

he was on the dentist list. Two weeks later, the plaintiff alleges that he spoke with Mr. Weaver

once again, and Mr. Weaver ordered Ms. Corbin to put him on the sick call list. Finally, the

plaintiff alleges that on April 2 2010, Mr. Weaver came to his cell, told him the dentist was back

and then personally escorted that plaintiff to the dentist. (Doc. 76, pp. 8-9). Accordingly, by the

plaintiff's own recitation, it would appear that Mr. Weaver acted within the scope of his duties as

the health care administrator and acted in as timely a fashion as possible to secure treatment for the

---

[5]In a <u>Bivens</u> case, the plaintiff must specify the acts taken by each defendant which violate
his constitutional rights. <u>See</u> <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994); <u>Colburn v. Upper
Darby Township</u>, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part
of the defendant and a causal connection to the harm alleged must be shown. <u>See</u> <u>Zatler v.
Wainwright</u>, 802 F.2d 297, 401 (11th Cir. 1986).

plaintiff after becoming aware of his complaints. To the extent the plaintiff alleges that Mr. Weaver had the duty and responsibility to recommend and approve him for treatment at an outside hospital, that is simply not the case. All requests for outside medical consultations must be reviewed and approved by the Utilization Review Committee U"URC"). (Doc. 66-1, p. 2). Accordingly, Mr. Weaver should be dismissed as a defendant.

Likewise, the plaintiff alleges no personal involvement in his medical care on the part of Richard Milton. Defendant Milton was the plaintiff's assigned Unit Manager and was not a member of the Health Services Department. The plaintiff alleges that defendant Milton failed to rpovide him with administrative remedy forms. However, neither the Constitution nor Federal Regulations create an entitlement to grievance procedures. Adams v. Rice, 40 F.3d 72 (4th Cir. 1994)(there is no constitutional right to participate in grievance proceedings); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)(prison regulations creating administrative remedy procedures do not create a liberty interest; prisoner's right is for access to the courts, which is not compromised by prison's refusal to entertain grievance); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)(no constitutional right was violated by defendant's failure, if any, to process all of the grievances [plaintiff] submitted for consideration); see also, Massey v. Hellman, 259 F.3d 641, 647 (7th Cir. 2001; Mann v. Adams, 855 F.2d 639, 640 (9th Cir.) cer. denied 488 US 898 (1988). Because defendant Milton's alleged "misconduct" did not violate any constitutional right, he must be dismissed as a defendant in this Bivens action.

## D. Patricia Corbin, Physician Assistant

The plaintiff alleges that in mid February, he handed defendant Corbin a request to see the dentist and went into great detail explaining to her the pain he was suffering. Moreover, the

plaintiff maintains that he also turned his face so that he could show her how swollen his face was. The plaintiff alleges that defendant Corbin is a trained medical professional, and when she became aware of that he was suffering from a surgical wound, it was her duty to see to it that he received proper dental care.

Defendant Corbin is an employee of the United States Public Health Service. Title 42 U.S.C. § 233(a) provides that the exclusive civil remedy available to any individual against an employee of the U.S. Public Health Service for any actions pertaining to medical, surgical, dental or related functions, is an action pursuant to the Federal Tort Claims Act (28 U.S.C. § 2672). Section 233 (a)

> protects commissioned officers or employees of the Public Health Service from being subject to suit while performing medical and similar functions by requiring that such lawsuits be brought against the United States instead. The United States thus in effect insurers designated public health officials by standing in their place financially when they are sued for the performance of their medical duties.

Cuoco v. Moritsugu, 222 F.3d 99, 108 (2d Cir. 2000). See also, U.S. v. Smith, 499 U.S. 160, 170 n.11 (1990) (42 U.S.C. § 233 is one of several statutes passed to provide absolute immunity from suit for Government medical personnel for alleged malpractice committed within the scope of employment); Carlson v. Green, 446 U.S. 14, 20 (1980) (Congress explicitly provides in 42 U.S.C. § 233(a) that the FTCA is a plaintiff's sole remedy against Public Health Service employees); Apple v. Jewish Hosp. And medical Center, 570 F. Supp. 1320 (E.D.N.Y. 1983) (motion for dismissal of the action against the defendant doctor, a member of the National Health Corps. granted and the United States substituted as defendant, and case deemed a tort action). Therefore, pursuant to 42 U.S.C. § 233(a), defendant Cornin enjoys absolute immunity from personal liability for all claims arising from the medical cares she provided the plaintiff, and she must be dismissed as a defendant

16

in this action.

## D. 8th Amendment Medical Claims

To state a claim under the Eighth Amendment, the plaintiff must show that defendants acted with deliberate indifference to serious medical needs of a prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[6]

---

[6] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F.

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905, 907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

The crux of the plaintiff's complaint is that approximately two months after having his molar and wisdom tooth removed, he began experiencing swelling and pain on the right side of his jaw. The plaintiff maintains that the pain was so severe, he was unable to eat and lost twenty-five

---

Supp. 642 (N.D. W.Va. 1997).

pounds[7]. The plaintiff further alleges that all of the defendants ignored his complaints, and he was made to suffer needlessly for an extended period of time.

The medical records establish that the plaintiff was seen in the Dental Clinic on December 11, 2009, complaining of a toothache. A limited examination was conducted and a panorex was completed. The plaintiff was placed on callout.(Doc.67-8, p. 40). On December 21, 2009, the plaintiff was seen in the Dental Clinic by Dr. Westfall pursuant to the callout. His examination revealed caries in tooth #31 and a partially erupted/partially impacted tooth #32. Both teeth were extracted, and the plaintiff was provided a prescription for 800 mg. of Ibuprofen. (Doc. 67-8, pp. 42-43). The plaintiff was counseled on his post-operative care and instructed to follow-up at sick call if necessary. On April 1, 2010, Patricia Corbin performed a sick call/triage on the plaintiff in the SHU. The plaintiff complained of a swollen area on the lower right side of his face ever since dental extraction and said it was now leaking pus. Defendant Corbin noted swelling to his right lower cheek and a boil like lesion. She assessed him as having cellulitis and abscess of the face and prescribed 100 mg. of the antibiotic Doxycycline for 14 days and 800 mg of Ibuprofen every 8 hours as needed. (Doc. 67-8, pp. 48-49). On April 2, 2010, the plaintiff seen at the Dental Clinic. The plaintiff again complained of pain in his cheek and stated that he had gotten "pus out of it." Upon examination, Dr. Westfall concluded that the plaintiff did have swelling on the right side of his face, and there was a 5mm by 5mm[8] abscess with appearance of infected hair. However, the extraction

---

[7]The medical records indicate that on July 22, 2009, the plaintiff weighed 191 pounds.(doc. 67-8, p. 10). Likewise, on October 30, 2009, the plaintiff weighed 191 pounds.(Doc. 67-8, p. 32). On May 6, 2010, the plaintiff's weight was recorded as 161 pounds, a drop of 30 pounds (Doc. 67-8, p. 55).. However, there is no way to tell if that weight was lost gradually over the intervening six months, or suddenly following extraction of his teeth.

[8]The closest measurement in inches to 5mm is 1/5 inch,

site showed no sign of active infection, no inflammation and no erythema. Accordingly, Dr. Westfall concluded that the swelling was non-odontogenic.(Doc. 67-8, p.50). On April 9, 2010, defendant Corbin conducted another sick call/triage encounter with the plaintiff in the SHU. The plaintiff reported a flare of his seasonal allergies, congestion, sneezing, and his eyes bothering him a bit. Absolutely no mention was made of any lingering swelling on the plaintiff's cheek. (Doc. 67-8, pp. 52-53).

Here, assuming *arguendo* that the plaintiff's 5mm by 5mm abscess is a serious medical condition, thus satisfying the first element of an Eighth Amendment claim, the medical record cited above clearly establishes that the plaintiff received adequate medical supervision at FCI Hazelton for his dental condition and small boil on his face. He was seen by Health Services at Chronic Care Visits or on sick call/triage encounters in the SHU. Other than the plaintiff's self-serving allegation that he was left to suffer for three months following extraction of his molar and wisdom tooth, there is simply nothing in the record to support his allegation. Rather, it would appear that the plaintiff was provided treatment by medical services as soon at it became known that he was experiencing pain and swelling. Furthermore, to the extent that the plaintiff may be alleging that his medical care at FCI Hazelton amounted to malpractice, ordinary medical malpractice based upon negligence in providing care does not state a claim under the Eighth Amendment. See Estelle, *supra* at 106. ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

In summary, as related above, the defendant has failed to identify a viable defendant for purposes of a Bivens[9] complaint with respect to an 8th Amendment claim of deliberate indifference

_____

[9]Again, defendant Corbin, as a member of the Public Health Service, enjoys absolute immunity for personal liability for any claims related to her medical care of the plaintiff.. In

to a serious medical condition. Therefore, it is the undersigned's recommendation that the defendants' motion to dismiss or, in the alternative, for summary judgment (Doc.**[65]** be **GRANTED**, and the plaintiff's complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915A and 1915(e) for failure to state a claim upon which relief can be granted as it relates to defendants Milton, Corbin, and Weaver. It is further recommended that the plaintiff's complaint against defendant Westfall be **DISMISSED WITHOUT PREJUDICE** for lack of service and **DISMISSED WITHOUT PREJUDICE** again defendant Azumah for failure to exhaust administrative remedies.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may filed with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and

---

addition, Dr. Westfall was never served with a summons and copy of the complaint.

21

Recommendation to all counsel of record, as applicable, as provided in the Administrative

Procedures for Electronic Filing in the United States District Court.

DATED: April 13, 2012

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE